UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RICHARD KESSLER,

                Plaintiff,

        - against -

WESTCHESTER COUNTY DEPARTMENT
OF SOCIAL SERVICES and WESTCHESTER
COUNTY,

                Defendants.
----------------------------------------------------------

04 Civ. 5752 (CLB)

*Memorandum and Order*



Brieant, J.

By motion filed on March 3, 2005 (Doc. #12), heard and fully submitted on April 8, 2005, Defendants Westchester County Department of Social Services ("DSS") and Westchester County, which are one and the same, move for summary judgment under Fed. R. Civ. P. 56. Opposition papers to this motion were filed on March 24, 2005.

The following facts are assumed to be true for purposes of this motion only. Plaintiff Richard Kessler is employed as an Assistant Commissioner by the DSS. He began this employment in March, 1977, and was promoted to his current position in 1983. The terms and conditions of his employment are governed by a collective bargaining agreement between the County and Local 456 of the Teamsters, and his job duties are defined consistently with the New York Civil Service Law.

In early April 2003, Plaintiff was working out of the DSS's administrative offices at 112

-1-



East Post Road in White Plains. On April 2, 2003, he was assigned to work in the Yonkers District Office by Deputy Commissioner Jewru Bandeh, not sued herein. The Yonkers District Office is the largest District Office and represents approximately half of the County's recipient caseload. As Assistant Commissioner, Plaintiff reports directly to Associate Commissioner Lee Jacobs. Plaintiff's job title, job grade, salary, benefits and days and hours of work were unaffected by his assignment to Yonkers.

On June 12, 2002, Plaintiff filed charges of discrimination with the New York State Division of Human Rights ("NYSDHR"), dual filed with the EEOC, against the Defendants. He alleged that he had been discriminated against on the basis of his age, creed, race, color and gender because he was the only higher level manager within DSS who was not promoted to Associate Commissioner during a broad re-classification of the Department in the Fall of 1997. The EEOC found "No Probable Cause" and issued a "Right to Sue" letter dated January 15, 2003. Plaintiff did not pursue the matter further, and it is now time barred.

On November 5, 2003, Plaintiff filed a second charge of discrimination with the NYSDHR and EEOC, in which he claimed that he had been retaliated against for filing his earlier Complaint, and claimed that he had been assigned to the Yonkers District Office in April, 2003 in retaliation for filing a Freedom of Information Law ("FOIL") request to receive information about his June 12, 2002 claims. Plaintiff received a 90-day Dismissal and "Right to Sue" letter from the EEOC on April 28, 2004. He filed his Complaint in this Court on July 23, 2004, alleging one claim of retaliation under the ADEA and one claim of retaliation under Title

VII.

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

The elements of a claim for retaliation are the same under both the ADEA and Title VII. Plaintiff must prove (1) that he engaged in protected activity; (2) that defendant was aware of this participation; (3) that Plaintiff suffered an adverse employment action; and (4) that a causal connection exists between the protected activity and the adverse employment action. *See Gordon v. City of New York City Board of Educ.*, 232 F.3d 111, 117 (2nd Cir. 2000). The Plaintiff need only have had a good faith, reasonable belief that he was opposing an unlawful employment practice in order to satisfy the first element; the employment practice does not need to have actually been unlawful. *See McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2nd Cir. 2001).

At this point, Plaintiff has produced sufficient evidence of a good faith, reasonable belief that he was challenging unlawful employment actions by the Defendants in filing his claim. Any dispute between the parties as to the Plaintiff's intent in filing his first NYSDHR Complaint

cannot be resolved by a summary judgment motion. However, it is clear on the submissions that Plaintiff did not suffer an adverse employment action. An adverse employment action is a materially adverse change in the terms and conditions of employment and includes "termination, demotion evidenced by a decrease in salary or wage, a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or other indices. . .unique to a particular situation." *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2nd Cir. 2004). There must be more than mere inconvenience or an alteration of job responsibilities. *See Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2nd Cir. 2000). The ADEA protects an employee against reprisals that do not reach the level of a termination or reduction in wages or benefits, but the employer's action must still be "sufficiently deleterious" to the Plaintiff's current or future employment to constitute an adverse employment action. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2nd Cir. 1997) ("minor, ministerial stumbling blocks" are insufficient to constitute adverse employment actions).

Plaintiff admits that he was never disciplined, suspended, written up and that his salary, benefits and hours of work were not decreased in any way. Plaintiff claims that "less flagrant reprisals by employers may indeed by adverse" and that it is the jury's function to determine whether an employment action was adverse. *Terry v. Ashcroft*, 336 F.3d 111 (2nd Cir. 2003) does not hold that an internal transfer, standing alone, is an adverse employment action. It *may* be an adverse employment action if it is accompanied by a negative change in the terms and conditions of employment. *See Morris v. Lindau*, 196 F.3d 102, 113 (2nd Cir. 1999).

It is clear that the traditional indices of adverse employment actions amounting to retaliation are not present in this case. Plaintiff has never received an unsatisfactory evaluation, been suspended, or had his work schedule or job title changed. His job status is protected by the New York State Civil Service Law as well as the Collective Bargaining Agreement. His job grade was unchanged by his transfer. This job grade is linked to a specific job title, job description and set of responsibilities. Since assuming the position of Assistant Commissioner over twenty years ago, his only pay increases have been the result of negotiated cost of living increases or pay increases required for everybody similarly situated, by the Collective Bargaining Agreement.

Since 1996, all wage increases have been awarded on the basis of an agreement negotiated between his union and Westchester County. Although there is currently not a contract in effect, the terms and conditions of his employment remain governed by the last effective contract, which expired in 2001.

There is no evidence that the transfer in this case was anything other than a pure lateral transfer between various offices within the discretion of the employer and responsive to its perceived needs. An adverse transfer could not be performed unilaterally by the Defendants without violating the union's labor contract, and possibly also the New York Civil Service Law. Any concomitant change in the terms of his employment constitutes mere administrative changes, and not a *de facto* demotion. *See Galabaya*, 202 F.3d at 641:

*Rodriguez* may be read for the proposition that a transfer is an adverse employment action

if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career. . .A purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. . .to be adverse, change in work assignment must cause "materially significant disadvantage". . .the key inquiry regarding involuntary transfers is whether the transfer constitutes a negative employment action tantamount to a demotion.

*Internal footnotes omitted.* Plaintiff's statement that "[Commissioner] Jacobs told plaintiff that he had not requested his services in Yonkers, that he did not really want him there, that he needed a manager and that they wanted him out of White Plains" does not demonstrate an adverse employment action. It also misstates the record. Commissioner Jacobs never stated that he was told that Plaintiff was transferred because he was unwanted in White Plains. Commissioner Jacobs merely inferred from the fact of the transfer that Mr. Kessler must have been unwanted in White Plains. *See Pl.'s Ex. G at 35-36*: (Testimony of Commissioner Jacobs)

> Q. Did you ever state to Mr. Kessler words to the effect of, that you had not requested his services at Yonkers and that he was assigned there because they wanted you [Mr. Kessler] out of White Plains?
>
> A. In the course of several conversations that did come up, I don't know if I used those exact words, but that sentiment did come up.
>
> Q. Why did you express that sentiment to Mr. Kessler?
>
> A. We had several conversations in which Mr. Kessler had indicated puzzlement as to - - this was in the beginning, as to why he was assigned to Yonkers and after several of those conversations, I think I said to him, well, I guess they don't want you in White Plains, I had not asked for you, but I guess they don't want you in White Plains, okay. Sort of like a statement of not that anyone said to me, we want him out of White Plains, but he was being reassigned and they wanted him somewhere else.

*Objections omitted.* Plaintiff argues further that in his opinion "he [Commissioner Jacobs] needed a [program] manager" instead of Mr. Kessler. At his deposition, Commissioner Jacobs did not recall making this statement, and stated that he was happy to have Mr. Kessler in

Yonkers. Mr. Kessler takes issue that he was "not [assigned] any line staff." Commissioner Jacobs stated that this was:

> Because I wanted to give him these duties because these were projects we never could get to, and I had managers who already had line staff, all of which were handling the span of supervision that they had adequately, and these were areas which were not being handled, so this was what I wanted to assign Mr. Kessler, these were important things.

The evidence belies Plaintiff's assertion that he was transferred to an inferior position in Yonkers in which he had less responsibility. Plaintiff's personal dissatisfaction with his current position in Yonkers and his belief that his skills and qualifications are underutilized do not create jury issues as to whether his transfer was adverse. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material fact."). Accordingly, the Court concludes that Mr. Kessler has not suffered an adverse employment action as a result of the transfer.

## Conclusion

Motion granted. Plaintiff's Complaint is dismissed. The Clerk shall file a final judgment.

SO ORDERED.

Dated: White Plains, New York
       April 20, 2005

_____
Charles L. Brieant, U.S.D.J.